**NOS LIMITED PARTNERSHIP et al.**

v.

**Allan BOOTH, Jr., in his capacity as Tax Assessor of the City of Newport et al.**

No. 93–397–A.

Supreme Court of Rhode Island.

Feb. 9, 1995.

Lori Caron Silveira and Joseph DeAngelis, Licht & Semonoff, Providence, for plaintiffs.

Joseph J. Nicholson, Jr., City Sol. and M. Teresa Weed, Newport, for defendants.

OPINION

SHEA, Justice.

This matter is on appeal from a Superior Court judgment that upheld a tax assessment made by Allan Booth, Jr. (defendant or assessor), in his capacity as Tax Assessor of the City of Newport, on a property known as Newport Onshore. For the following reasons we reverse the decision of the trial justice and remand the case to the Superior Court for further proceedings.

The facts pertinent to this appeal are as follows. Nos Limited Partnership (plaintiff) is the developer of a transient guest facility located on the Newport waterfront known as Newport Onshore. Suites in the property are rented on a nightly basis and are subject

to the time-share form of ownership. Under time-share ownership, purchasers of time-share weeks at Newport Onshore acquire a fractional ownership interest in the resort, together with the right to use a certain suite during a particular week each year. The interests of time-share owners at Newport Onshore are represented by Newport Onshore Owners' Association (co-plaintiff), an unincorporated association.

The dispute that is the subject of the lawsuit began in 1982 when the Tax Assessor of the City of Newport assessed the Inn on the Harbor, the first transient guest facility to implement time-share form of ownership in Newport. The assessor did not assess the Inn on the Harbor in the same manner that he assessed other real estate used as transient guest facilities in Newport. The assessor assessed the Inn on the Harbor, not valuing the property as one whole parcel of real estate, but first valuing a suite by adding up the purchase prices paid for time-share weeks in that suite. He then multiplied the value of a single suite by the number of suites at the property and deducted arbitrary percentages for the non-real property components of the time-share product.

The developer of the Inn on the Harbor and the owners' association challenged the assessment in the Superior Court. The Superior Court found that the assessor had not assessed the Inn on the Harbor using identifiable and accepted methods of appraisal within the confines of state law. On appeal this court affirmed declaring that the assessor had erred in assessing fractional ownership interests in the resort, rather than assessing the physical real estate itself. *Inn Group Associates v. Booth*, 593 A.2d 49, 52–53 (R.I.1991). We further ruled that under G.L.1956 (1984 Reenactment) § 34–41–1.03(b) of the Rhode Island Time–Share Act, assessments can be made only on the entire time-share development as a whole unit. *Id.* at 55.

After the assessment methodology was invalidated by this court, defendant devised new methods for valuing time-share transient guest facilities. The defendant elected to treat those time-share transient guest facilities with suites of more than 560 square feet,

including Newport Onshore, as residential condominium complexes. This valuation process involved comparing individual guest suites at Newport Onshore to residential condominium units at Coddington Landing, Goat Island South, Bonniecrest, and Harborview, all condominium developments within the city of Newport. The defendant's method of assessment was to deduce the square footage of an average room size of a suite of the subject properties and then multiply this average size by $100 per square foot, the same method used for residential condominium projects. After calculating the assessed value, defendant multiplied that figure by the number of suites at the respective properties to arrive at a total assessed value.

Convinced that this method of assessment was no more lawful than the method declared unlawful in *Inn Group*, plaintiffs (Nos Limited and Newport Onshore Owners' Association) exhausted their administrative remedies and then brought suit in Superior Court. In June of 1992, the trial proceeded on the issue of illegal and/or discriminatory taxation only, with other issues reserved for trial at a later time. On September 1, 1992, the trial justice upheld the assessment finding that the new method of assessing Newport Onshore did not violate the Rhode Island Time–Share Act and was not "outside the ambit of state law." The plaintiffs filed a timely appeal.

The question now before us is whether the trial justice erred in holding that defendant's assessment complied with Rhode Island law. General Laws 1956 (1984 Reenactment) § 34–41–1.03(b), as enacted by P.L.1984, ch. 141, § 2 of the Rhode Island Time–Share Act provides:

> "Each time-share estate constitutes for all purposes a separate estate in real property. *Assessments can only be made on the real property value of the development.* Notices of assessment and bills for taxes must be furnished to the managing entity, if any, or otherwise to each time-share owner, but the managing entity is not liable for the taxes as a result thereof." (Emphasis Added.)

Although we have held that the tax assessor is not bound by any particular formula, rule, or method in seeking to ascertain the fair

market value of real estate, *Kargman v. Jacobs*, 113 R.I. 696, 704, 325 A.2d 543, 547 (1974), it is imperative that the tax assessor indeed ascertain the fair market value of the subject real property, not on the nature of the estate by which the property is held by the taxpayer.

The Rhode Island Legislature authorizes municipalities to levy taxes on real estate, which must first be assessed at its full and fair cash value, or at a uniform percentage thereof, not to exceed 100 percent. G.L.1956 (1988 Reenactment) § 44–5–12. This court has defined "full and fair cash value" as fair market value. *Allen v. Bonded Municipal Corp.*, 62 R.I. 101, 105, 4 A.2d 249, 251 (1938). In the context of time-share properties we have stated that individual suites have no separate legal existence, and we must look at the development as a whole as the proper unit for assessment. *Inn Group Associates*, 593 A.2d at 53.

The defendant admits that he may not have used the most "optimal alternative" to assess the real property value of the development. We acknowledge the practical difficulties in assessing time-share properties and note in the case before us that plaintiffs failed to provide an account specifying the value of the subject property. However, we cannot ignore the fact that defendant improperly assessed the subject property by not complying with the mandate of the laws of the State of Rhode Island.

■ In the case at bar defendant admitted that he valued each time-share *suite* at $100 per square foot before adding the sum of the suites to equal the value of the development. Although defendant did not make the same mechanical assessment made in the *Inn Group* litigation, he did use the *suite* as a unit of assessment. Our holding in *Inn Group* explained that the original assessment of the wrong unit of appraisal is dispositive and invalidates the assessment. *Inn Group Associates*, 593 A.2d at 51, 55. We reasoned that the legislative intent of the Rhode Island Time–Share Act was that time-share estates must not be separately assessed and taxed. *Id.* at 54. Therefore, we are not in accord with the reasoning of the trial justice. The assessment was not within the "ambit of Rhode Island law."

Since this assessment is not consistent with state law, we will not address plaintiffs' argument that defendant singled out Newport Onshore for discriminatory tax treatment.

■ We acknowledge that plaintiffs failed to provide evidence of fair market value of the subject property in the case before us and were limited to arguing the illegality of assessment on appeal. *See Van Alen v. Stein*, 119 R.I. 347, 353, 376 A.2d 1383, 1386 (1977) (emphasizing compliance with § 44–5–26). In light of the problems with the bifurcation of these assessment proceedings, we will set forth a more appropriate procedure to be followed in this type of dispute in the future. In any tax assessment challenge, the assessor must first present his or her conclusion as to fair market value and the procedure used to arrive at such fair market value of the subject property. If the taxpayer challenges *either* the legality of the assessment or claims that the assessor used an inappropriate fair market value of the subject property, the burden will be on the taxpayer to present evidence of fair market value. This procedure will allow the trial justice to decide the entire case before the court and will enable this court to properly review the entire record on appeal.

For the foregoing reasons the plaintiffs' appeal is sustained. The judgment appealed from is vacated. The papers of the case are remanded to the Superior Court for further proceedings in accordance with these new directives.